UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHEILA M. DEAN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>　　　　　Defendant. | CASE NO. C05-5292RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for February 3, 2006 |

Plaintiff, Sheila M. Dean, has brought this matter for judicial review of the denial of her application for social security disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-six years old.[1] Tr. 28. She has a high school education and past work experience as a color scanner operator and newspaper compositor. Tr. 20, 64, 69, 78.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

1   Plaintiff filed an application for disability insurance benefits on November 12, 2002, alleging disability as of February 28, 1998, due to left leg, hand and arm weakness from multiple sclerosis. Tr. 19-20, 56, 63. Her application was denied initially and on reconsideration. Tr. 28-30, 36. Plaintiff requested a hearing, which was held on August 31, 2004, before an administrative law judge ("ALJ"). Tr. 246. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a medical expert. Tr. 246-68.

On November 23, 2004, the ALJ issued a decision determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had a "severe" impairment consisting of multiple sclerosis;

(3) at step three, plaintiff's impairment did not meet or equal the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform the full range of sedentary work prior to December 31, 1998, her date last insured, but was precluded from performing her past relevant work; and

(5) at step five, a finding of non-disability was directed by 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.21.

Tr. 25-27. Plaintiff's request for review was denied by the Appeals Council on April 20, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On April 26, 2005, plaintiff filed a complaint in this court seeking judicial review of the ALJ's decision. (Dkt. #1). Plaintiff argues that decision should be reversed and remanded to the Commissioner for an award of benefits because:

(a) the ALJ erred in determining that prior to December 31, 1998, plaintiff's only symptom was left leg weakness;

(b) the ALJ did not provide clear and convincing reasons for rejecting plaintiff's testimony;

(c) the ALJ provided inadequate reasons for rejecting the lay witness statements in the record;

(d) the ALJ erred in assessing plaintiff's residual functional capacity; and

(e) the ALJ erred in finding plaintiff not disabled at step five of the disability evaluation process.

The undersigned agrees the ALJ erred in finding plaintiff not disabled, but for the reasons set forth below, finds the court should remand this case for further administrative proceedings. Although plaintiff requests

REPORT AND RECOMMENDATION
Page - 2

oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was December 31, 2002. Tr. 14. Therefore, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. Tidwell, 161 F.3d at 601. As discussed below, however, the record currently before the court does not clearly show that plaintiff has done so here.

II.   The ALJ Erred in Determining that Prior to Her Date Last Insured Plaintiff's Only Symptom Was Left Leg Weakness

With respect to the symptoms of multiple sclerosis plaintiff exhibited prior to December 31, 1998, the date her insured status expired, the ALJ found as follows:

> As the medical evidence as well as the medical expert indicates, MS is a progressive disease but prior to December 31, 1998, the claimant's only symptoms were left leg weakness (Exhibits 1F, 3F). Her arm and hip weakness as well as her other symptoms did not progress until 1999 (Exhibit 2F, 3F/19-20, 4F/1). The claimant testified she could stand for 20 minutes then sit as long as needed and then stand for 20 more minutes. Accordingly, I find the claimant retains the residual functional capacity to perform sedentary work.

Tr. 24. Plaintiff argues the ALJ erred by failing to acknowledge the evidence and testimony in the record regarding her fatigue, left arm and urinary problems prior to her date last insured. At least with respect to plaintiff's fatigue and urinary problems, the undersigned agrees.

The medical and other opinion evidence in the record shows that plaintiff reported on a number of occasions experiencing fatigue, general weakness and urinary problems prior to her date last insured. In mid-April 1999, for example, plaintiff related to Dr. Mark S. Peckler, a urologist, "a two year history of urinary urgency, at times associated with incontinence, as well as urinary frequency." Tr. 203. In mid-May 1999, plaintiff reported that "[a]fter the birth of her second child 2 years ago she developed reduced time to fatigue," which would "occur after about 10-15 minutes." Tr. 115. She further reported that "[a]fter her second child she also developed increased urgency and incontinence," and that she would "have to urinate every 1-2 hours." Id.

In an early October 2001 diagnostic report, Dr. James S. Griffith noted that "[a]fter the birth of her first child in 1993," plaintiff developed "urine incontinence," which continued to the present. Tr. 164. It also was noted that "[s]he probably had more difficulty in 1997-98 with weakness 10-15 minutes after activity, which she felt resolved after a half hour." Tr. 164-65. In late July 2002, it again was noted that "[i]n 1993, she developed urge incontinence following delivery of her first child." Tr. 185. Plaintiff also submitted a statement, dated March 8, 2004, in which she stated that "[b]etween 1993 and 1996, there were minor problems with fatigue and weakness, and the ever present UI." Tr. 105. Although the ALJ found plaintiff's allegations regarding the extent of her symptoms prior to her date last insured to be not credible, as explained below, the ALJ erred in doing so.

Statements from plaintiff's husband and parents also indicate that plaintiff experienced symptoms of fatigue and urinary problems prior to her date last insured. For example, plaintiff's father in a statement dated March 4, 2004, stated that after plaintiff's daughter was born in 1996, plaintiff could not stand the drive to her parents, "got tired awfully easily," "would have to sit down frequently," and "looked tired." Tr. 101. Plaintiff's mother, in another statement also dated March 4, 2004, stated that around that time, she noticed plaintiff "could hardly get around or be on her feet more than 5 or 10 minutes maximum, and "was just exhausted." Tr. 102. Plaintiff's husband, in a statement dated March 9, 2004, stated that after the birth of their daughter, if she did "[a]ny physical activity" that went "beyond fifteen minutes or a half hour she

would have to stop and rest." Tr. 103.  Again, while the ALJ discounted the credibility of these statements, as explained below, he erred in doing so.

The evidence in the record regarding plaintiff's left arm problems, on the other hand, is much more mixed.  As discussed above, plaintiff reported in mid-May 1999, symptoms of weakness and fatigue, as well as problems with urinary incontinence prior to her date last insured. Tr. 115.  However, she made no mention of left arm problems during that period, although she did report current symptoms of feeling like she had been lying on that arm. Id.  Her "progressive difficulties" were noted in mid-November 1999, but, again, no specific left arm issues were mentioned. Tr. 198.  In early October 2001, plaintiff reported that her problem with "left arm weakness" began "in about May 1999," which she stated would be "intermittent depending on activity." Tr 165.  In late July 2002, in addition to reporting that she had "urge incontinence" beginning in 1993, and recurrent left leg symptoms in 1996, plaintiff stated that it was only "[o]ver the last two years" that her left arm also had been affected. Tr. 185.

It is true that plaintiff and her husband and mother have all provided statements indicating that her left arm symptoms actually began prior to the date her insured status expired. Tr. 102-03, 105.  Indeed, her husband stated that after the birth of their daughter in 1996, plaintiff "could not do anything repetitive with her hands such as gardening, cooking, even typing, for very long." Tr. 103.  Her mother stated that after the birth of her son in 1993, plaintiff "quit writing with her left hand," because she was not able to hold a pen or pencil. Tr. 102.  Thus, there is a clear discrepancy between the medical and other evidence in the record regarding exactly when plaintiff's left arm and/or hand symptoms began.  Plaintiff argues that there are reasonable explanations as to why she did not mention these symptoms to any of her physicians prior to the date her insured status expired.  For example, plaintiff stated that she was "still assuming" that her multiple sclerosis symptoms "were attributable to the rearing of two small children." Tr. 105.

While this may explain why plaintiff did not think she had multiple sclerosis at the time, it does not necessarily explain why she did not seek medical treatment for a hand problem which apparently was so serious that she could not do anything repetitive with her hands and had to give up writing.  In addition, the statements in the record from both plaintiff and her family regarding her ability to use her hands during the relevant time period are not entirely consistent.  For example, despite the above statements, at the hearing while plaintiff testified that she had problems writing, typing and holding a telephone in December 1998, she

REPORT AND RECOMMENDATION
Page - 5

1  also testified that those problems only "were probably there," and that they were not noticeable, except for
2  maybe use of the telephone. Tr. 255.  She further testified that she thought she could have performed a job
3  at that time which required the occasional use of her left hand. Tr. 256.

4        The problem in this case is that while the medical evidence clearly does not show plaintiff had any
5  left hand complaints prior to her date last insured, the ALJ erred in assessing plaintiff's credibility and in
6  rejecting the lay witness statements in the record.  However, the responsibility for resolving ambiguities and
7  conflicts in the evidence is solely the ALJ's. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); see
8  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (where evidence is not conclusive, questions of
9  credibility and resolution of conflicts is sole function of ALJ).  As such, the undersigned finds it proper to
10 remand this case to the Commissioner to re-consider whether or not the evidence in the record establishes
11 that plaintiff's left hand problems began prior to or as of her date last insured.  With respect to the issue of
12 plaintiff's fatigue and urinary problems though, as discussed above, the evidence in the record reveals that
13 those conditions did exist before her insured status expired.

14 III.    The ALJ's Reasons for Rejecting Plaintiff's Testimony Were Not Clear and Convincing

15        Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d
16 639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination. Allen, 749
17 F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is
18 based on contradictory or ambiguous evidence. Id. at 579.  That some of the reasons for discrediting a
19 claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long
20 as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th
21 Cir. 2001).

22        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the
23 disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible
24 and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12
25 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's
26 reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The
27 evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th
28 Cir. 2003).

1    In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ addressed the credibility of plaintiff's testimony as follows:

> The claimant's testimony is generally credible, but not to the extent alleged for the period prior to her date last insured of December 31, 1998. Before her date last insured, the claimant had not generally received the type of medical treatment one would expect for a totally disabled individual. In fact, she did not get much treatment until 1999; at which time her cranial and cervical MRI's were essentially normal (Exhibits 1F/7-8, 48, 3F/31). Additionally, there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments (Exhibit 1F/2, testimony). The claimant was apparently able to care for her two young children, which can be quite demanding both physically and emotionally without any particular assistance.

Tr. 23-24. Plaintiff argues these are not clear and convincing reasons for rejecting her testimony regarding her allegations of disability prior to her date last insured. The undersigned agrees.

Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).

A claimant's statements, therefore, "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or the medical reports or records show that the individual is not following the treatment as prescribed or there are no good reasons for their failure." SSR 96-7p, 1996 WL 374186 *7. On the other hand, the ALJ "must not draw any inferences" about a claimant's symptoms and their functional effects from such a failure, "without first considering any explanations" that the claimant "may provide, or other information in the case record, that may explain" that failure. Id. Examples of such explanations include the following:

> *   [The claimant's] daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms. . . .

REPORT AND RECOMMENDATION
Page - 7

> * [The claimant] may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit [the claimant].

Id. at *8.

It is these two explanations that plaintiff argues apply here, and that she asserts the ALJ failed to take into consideration. Plaintiff asserts, for example, that she did not seek more medical treatment for her condition, because she believed multiple sclerosis was ruled out by a normal MRI obtained in 1993, she attributed her symptoms to a particularly hard labor she experienced with the birth of her second child in 1996, and she believed that her symptoms would improve. Tr. 229, 253-54, 257-58. Plaintiff also asserts in her opening brief, although this assertion is not contained in her testimony or in either of the written statement she provided, that she did not believe going to the doctor would do any good. Thus, plaintiff argues that she did seek medical treatment, but to no avail.

As discussed above, however, while plaintiff may have thought her symptoms were due to the hard labor she experienced with her second child, this only explains why she did not think that she had multiple sclerosis at the time. Further, the birth of plaintiff's second child did not occur until 1996, and, as noted above, the record contains testimony indicating she began experiencing her symptoms several years prior thereto. In addition, while she may have thought her condition would improve, she apparently carried this belief for at least two years (since the birth of her daughter in 1996), and probably longer (she began having symptoms prior to 1993). It is difficult to believe that someone who is complaining of disabling physical symptoms would wait such a long time before seeking medical attention. As such, it is hardly obvious that plaintiff actually sought such treatment to the best of her ability, but to no avail. Other than a normal MRI in 1993, furthermore, there is no indication in the record that she ever was advised there was no effective medical treatment for her symptoms.

Plaintiff's reliance on the second explanation, that she structured her daily activities to minimize or eliminate her symptoms, is equally tenuous. Plaintiff's testimony and the statements of her and her family do indicate she received assistance in the performance of household and other tasks, because she allegedly was increasingly unable to do such activities. Tr. 103, 105, 253, 259. It is not clear, however, whether she was minmizing her daily activities so as to avoid having to seek medical treatment, or merely because her physical impairments caused her to do so. That is, just because a plaintiff is unable to do as many activities

REPORT AND RECOMMENDATION
Page - 8

as she was able to prior to her alleged onset date of disability, this does not necessarily mean she is credible regarding her failure to seek appropriate medical treatment for her condition.

Nevertheless, even though, as just explained above, there may be valid reasons as to why plaintiff's explanations for her failure to seek appropriate medical treatment are not credible, it is not at all clear that the ALJ actually considered any such possible explanations. In addition, the undersigned does not find the ALJ's reliance on the fact that plaintiff stopped working for reasons not related to her allegedly disabling impairments to be valid. While it does appear plaintiff stopped working due to the birth of her first child rather than because she was physically unable to work, the record indicates she initially stopped working long before her alleged onset date of disability. Tr. 255. Thus, it is questionable what bearing this fact has on plaintiff's ability to work some five years later. In other words, even though a claimant originally stops working for reasons other than disability, this in itself does not necessarily show that several years later the claimant did not suffer from a disabling impairment.

Finally, the undersigned also finds the ALJ's reliance on the fact that plaintiff had two children to care for to be questionable as well. Testimony and statements from plaintiff and her husband indicate that over time starting with the birth of their second child in 1996, her husband increasingly took on more of the household chores and other responsibilities, though she did apparently continue to participate in such tasks, such as doing the cleaning and watching their children. Tr. 103, 105, 259-60. Thus, while it is not exactly clear the extent of assistance plaintiff required in performing household tasks and taking care of their two children, it does seem, contrary to the ALJ's findings on this issue, that plaintiff did receive at least some assistance in those areas. Thus, this reason too does not at this point appear to be a clear and convincing reason for discounting plaintiff's credibility.

The undersigned, nevertheless, finds it appropriate to remand this matter for further administrative proceedings rather than for an award of benefits. It is true the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). The Court of Appeals in Connett went on to state, however, it was "not convinced" the "crediting as true" rule was mandatory. Id. Thus, at least where findings are insufficient as to whether a claimant's

1  testimony should be "credited as true," it appears the courts "have some flexibility in applying" that rule.
2  Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (applying "crediting as true" rule, but
3  noting its contrary holding in Connett).[2]  Because it is not entirely clear, as discussed above, that all of
4  plaintiff's allegedly disabling impairments were present prior to her date last insured, that her reasons for
5  not seeking appropriate medical treatment sooner are credible, or that she was significantly restricted in her
6  ability to participate in household tasks, including the care of her children, this matter should be remanded
7  for further administrative proceedings to re-consider these issues.

III.    The ALJ Erred in Evaluating the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001).  An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

With respect to the lay witness statements in the record provided by plaintiff's family members, the ALJ found as follows:

> Counsel argues that the lay statements support the claimant's testimony but a careful read of them (Exhibits 8E-11E) reveals that they are running the times together. Virtually all of them talk about 1996 at the birth of her second child, then report that "now" she cannot do much. I have no reason to doubt this given her current condition, however, the witnesses are mixing "now" with "then" without any distinction. This is not [sic] say they are not credible, just engaging the tendency to not distinguish times. I note in this regard that at the material time the claimant was raising two children (a one-year-old and a two-year-old) while her husband worked, hence I believe she could lift, carry, walk, etc. well enough to do this. Hence I find the claimant could at the very least do sedentary work.

---

[2] In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. Benecke, 379 F.3d at 594. The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id.  It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96. In this case, however, as explained herein, questions remain as whether plaintiff in fact was disabled prior to her date last insured.

REPORT AND RECOMMENDATION
Page - 10

1  Tr. 24 (internal footnote omitted).  Plaintiff argues that although these witnesses did testify to some degree

2  regarding her current symptoms, their statements clearly refer back to limitations she had prior to her date

3  last insured.  The undersigned agrees.

4      For example, plaintiff's father stated as follows:

> After her daughter Shannon was born in 1996, her trips became even more infrequent because she could not stand the drive.  She got tired easily.  She would have to sit down frequently.  She looked tired.

Tr. 101.  Her mother's statement reads in relevant part:

> After her son Jordan was born in 1993, she had a really bad spell which then eased off a bit.  She quit writing with her left hand because she could not hold a pen or pencil after Jordan was born.  After Jordan was born, she would go down stairs but it would take her a long time, she would have to hold onto the railing and the wall.  I was always scared going downstairs because I was afraid she would fall.  We live right across the street from a park, and when she brought Jordan to visit we would take him there to play.  She very seldom went with us, because she could not manage the trip.  She would stay home.
>
> It got really bad when Sheila's daughter Shannon was born in 1996.  I noticed she could hardly get around or be on her feet more than 5 to 10 minutes maximum.  She was just exhausted.  She had difficulty walking and she walks even less now.

Tr. 102.  Finally, plaintiff's husband stated as follows:

> After our son Jordan was born in 1993, I started noticing Sheila was having problems  She had an MRI in 1993 because of problems with her eyes.  They told her she did not have multiple sclerosis.  But her symptoms did not get any better.
>
> Significant problems began after our little girl was born in October 1996.  Sheila had a really difficult birth and difficult labor, so we thought what she was experiencing could be related to the birth.  She never did get her strength back.
>
> After our daughter was born, Sheila's ability to walk gradually decreased, to where she could only walk three or four blocks.  Any physical activity, such as cleaning the house or using her hands to do something, that was beyond fifteen minutes or a half hour she would have to stop and rest.  She could not do anything repetitive with her hands such as gardening, cooking, even typing, for very long.  She used to get on the computer and type for a while, and she could not do that any more.  This was because of fatigue in her left hand.  Even sit down activities that she enjoyed, such as quilting, after an hour or so, she had to stop and rest.

Tr. 103.

    Thus, as can bee seen, although each of these witnesses then did go on to discuss plaintiff's current symptoms in their statements (Tr. 101-04), it is quite clear from the excerpts set forth above, that they also discussed plaintiff's symptoms prior to her date last insured.  Accordingly, the ALJ's above stated reason for discrediting the statements of plaintiff's family members is not valid.  Plaintiff further argues that under

1  Schneider v. Commissioner of Social Security Administration, 223 F.3d 968 (9th Cir. 2000), she should be
2  found disabled based on those statements. However, as with the issues concerning the medical evidence in
3  the record and plaintiff's own testimony and statements, it is not clear "further administrative proceedings
4  would serve no useful purpose." Id. at 976 (citing Smolen, 80 F.3d at 1292). Indeed, there is no vocational
5  expert or other such testimony in the record indicating that even if the limitations described by plaintiff and
6  her family were to be credited as true, the ALJ would be required to find her disabled.

7  IV.    The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

8  If a disability determination "cannot be made on the basis of medical factors alone at step three of
9  the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and
10 assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A
11 claimant's residual functional capacity assessment is used at step four to determine whether he or she can do
12 his or her past relevant work, and at step five to determine whether he or she can do other work. Id.
13 Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

14 A claimant's residual functional capacity is the maximum amount of work the claimant is able to
15 perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work
16 must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those
17 limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a
18 claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-
19 related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the
20 medical or other evidence." Id. at *7.

21 Here, the ALJ found plaintiff had the residual functional capacity to perform sedentary work. Tr. 24,
22 26. Plaintiff argues the ALJ erred in so finding, because her testimony and the lay witness statements in the
23 record show that she would have had difficulty performing a full range of sedentary work prior to her date
24 last insured. The undersigned agrees with plaintiff that the ALJ erred in assessing plaintiff's residual
25 functional capacity, in light of the fact that, as discussed above, the ALJ erred in evaluating the evidence in
26 the record regarding plaintiff's limitations prior to her date last insured, in assessing plaintiff's credibility,
27 and in discounting the lay witness statements in the record. It is not clear, however, that such testimony or
28 lay witness statements show plaintiff is incapable of performing sedentary work.

REPORT AND RECOMMENDATION
Page - 12

At the hearing, for example, plaintiff testified that she thought she could have performed a job prior to her date last insured that allowed her "to sit down for the majority of the day," and that did not require her to use her hands more than occasionally. Tr. 256.  She also testified that she could probably have lifted ten pounds with her left hand at that time. Id.  Sedentary work is defined in the Social Security Regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  Thus, it appears that based just on plaintiff's testimony at the hearing, she indeed may have been able to perform such work prior to her date last insured.  Accordingly, this matter should be remanded also to re-consider whether plaintiff is in fact capable of performing such work.

V.     The ALJ Erred in Finding Plaintiff Not Disabled at Step Five of the Disability Evaluation Process

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).  The Grids may be used if they "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original).  That is, the claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in the original).  If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate.[3] Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

Here, the ALJ found that because the evidence in the record supported a finding that plaintiff could "perform the demands of the full range of sedentary work, a finding of 'not disabled'" was directed by Grid Rule 201.21. Tr. 25.  Plaintiff argues that her testimony and the lay witness statements in the record show

---

[3]"Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION
Page - 13

that she has significant non-exertional limitations, which precluded the ALJ from relying on the Grids to find her not disabled. As discussed above, the ALJ erred in considering the medical and other evidence in the record regarding plaintiff's impairments, which indicates plaintiff may have had significant limitations with respect to fatigue, urinary problems and left hand weakness prior to her date last insured. Because, it is not entirely clear based on the record before the court that plaintiff is unable to perform the full range of sedentary work, and thus whether such limitations would preclude the ALJ from relying on the Grids, this is another issue the Commissioner shall re-determine on remand.

VI.     This Matter Should Be Remanded for Further Administrative Proceedings

The court may remand a case "either for additional evidence and findings or to award benefits." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because, as discussed above, issues remain with respect to plaintiff's limitations, residual functional capacity and ability to perform other work existing in significant numbers in the national economy prior to her date last insured, this matter should be remanded to the Commissioner for further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 3, 2006**, as noted in the caption.

REPORT AND RECOMMENDATION
Page - 14

1    DATED this 5th day of January, 2006.

                                                      /s/ Karen L. Strombom
                                                      Karen L. Strombom
                                                      United States Magistrate Judge